MADDOX, Justice.
The United States District Court for the Northern District of Alabama has certified to this Court the following questions, pursuant to Rule 18, Ala.R.App.P.:
“(1) Is the portion of the agreement wherein defendant agreed ‘to establish a practice of obstetrics and gynecology exclusively in Jasper, Alabama ... for a period of not fewer than forty-eight (48) consecutive months’ an illegal restraint on [the defendant’s] profession and, to that extent, void under Alabama Code [1975,] § 8-l-l(a) as against public policy?
“(2) If the above-referenced provision of the agreement is void under Alabama Code § 8-1-1 (a) as against public policy, is the provision severable from the loan repayment provisions of the agreement and/or the promissory notes such that plaintiff may properly engage in collection efforts as authorized by the express terms of the Agreement?”
We answer the first question in the negative. Because of our answer to the first question, an answer to the second question is unnecessary; therefore, we decline to answer the second question.
I.
The district court’s order certifying its questions provides the following background information: The United States Department of Health and Human Services has determined that Walker County has a shortage of physicians to serve the population and has designated that county as a “Health Professional Shortage Area.”
On October 24, 1996, Walker Baptist Medical Center (“Walker Baptist”) and Daniel P. McDonald, M.D., entered into a “Physician Recruitment Agreement.” Pursuant to the Agreement, Walker Baptist agreed to lend to McDonald certain sums of money to enable him to complete his residency at the University of South Alabama Medical Center. McDonald agreed “to establish a practice of obstetrics and gynecology exclusively in Jasper, Alabama no later than October 1, 1998, and thereafter to maintain such practice in Jasper, Alabama for a period of not fewer than forty-eight (48) consecutive months.” Each loan made to McDonald was evidenced by a promissory note that required McDonald to pay the remaining balance, plus interest, on October 1, 2002. Both the Agreement and the promissory note included severability provisions.
According to the Agreement, if McDonald located his medical practice in Jasper upon completion of his medical residency, then the loans were to be forgiven over a period of time. Specifically, the agreement contemplated that McDonald would maintain his practice in Jasper for 48 months and, for each month that McDonald maintained his practice in Jasper, the hospital would forgive 1/48th of the principal amount and interest. After four years, all of the principal and interest would be forgiven. However, the contract contained an acceleration clause providing that if McDonald breached the terms of the Agreement, each loan (less any amount forgiven) would become immediately due and payable in full.
On October 2, 1996, McDonald signed a promissory note for $45,000. On December 31, 1996, March 26, 1997, June 25, 1997, November 15, 1997, and December 31, 1997, McDonald signed promissory notes, each in the amount of $12,285.71. Walker Baptist made payments totaling $106,428.55 to McDonald. The promissory *171 notes included the following default provision:
“If the Maker default on any payment due under this Note, or if that certain Physician Recruitment Agreement by and between Maker and Holder shall be terminated for any reason, the whole of the indebtedness evidenced hereby, or any balance remaining unpaid thereon, together with any and all accrued interest, may at the option of the Holder, and without notice of such acceleration to the Maker, become due and payable immediately (as such amount may be reduced in accordance with section 4.2 of that certain Physician Recruitment Agreement by and between Maker and Holder). All rights and remedies of the Holder under the terms of this Note, and applicable statutes or rules of law, shall be cumulative, and may be exercised successively or concurrently, at the sole discretion of such Holder.”
By letter dated June 11, 1998, McDonald informed Walker Baptist that he had decided not to locate his practice in Jasper. He also refused to repay the $106,428.55 he had received from Walker Baptist. Walker Baptist filed this action against McDonald on December 29, 1998, to collect under alternative theories of breach of contract and breach of promissory notes.
II.
The district court’s first certified question requires us to determine if a provision in the Physician Recruitment Agreement between Walker Baptist and McDonald violates § 8-1-1(a), Ala.Code 1975. That section reads, in pertinent part, “Every contract by which anyone is restrained from exercising a lawful profession ... is to that extent void.” McDonald argues that the Agreement violates the restraint-of-trade provision in § 8 — 1—1(a) because the Agreement “requires [him] to locate his medical practice ‘exclusively’ in Jasper, Alabama, or suffer serious financial repercussions for failing to do so.” Based on the particular facts of this case, we disagree with McDonald’s argument.
It is true that § 8-1-1 (a) places a broad general ban on every contract that restrains anyone from exercising a lawful profession. There are two exceptions to this otherwise uncompromising provision,[1] neither is applicable to this case. Therefore, it would appear on its face that the agreement whereby McDonald is required to establish a medical practice “exclusively” in Jasper violates § 8-1-1(a). See Anniston Urologic Assocs., P.C. v. Kline, 689 So.2d 54, 57 (Ala.1997) (“ ‘Any bargain or contract which purports to limit in any way the right of either party to work or to do business ... may be called a bargain or contract in restraint of trade.’ 14 Willi-ston on Contracts, § 1683 (3d ed.1972).”). However, by a rule of statutory construction, specific provisions relating to specific subjects are understood as exceptions to general provisions relating to general subjects. Murphy v. City of Mobile, 504 So.2d 243, 244 (Ala.1987). We find this principle of statutory construction applicable to these parties’ Physician Recruitment Agreement.
The Legislature, in § 16-47-121, Ala.Code 1975, created a Board of Medical Scholarship Awards for the purpose of providing loans and scholarships “for the medical training of qualified applicants for admission, or students in” medical schools in Alabama. This program provides two kinds of awards: loans and merit scholarships. § 16-47-124. The recipient of a merit scholarship does not have to repay the award. § 16-47-124(2). However, the recipient of a loan must agree to repay the loan following graduation, “under the terms of a contract to practice clinical medicine in an area of Alabama identified by the board as medically underserved for a term of years.” § 16-47-124(1). Furthermore, if the recipient of a loan defaults on the loan or otherwise breaches the contract to practice medicine in a medically *172 underserved area in Alabama, the recipient is “liable for immediate repayment of the total principal loan amount plus interest.” § 16-47-127(a). Regardless of whether the Agreement at issue in this case was entered into pursuant to these Code sections, the principles announced by the Legislature in these sections clearly show a legislative intent to promote such agreements.
The Agreement between Walker Baptist and McDonald mirrors the agreements described in § 16-47-121 et seq., and, based on that fact, we are unwilling to say that the Legislature, under the general ban set out in § 8-1-1(a), intended to outlaw agreements such as the one between Walker Baptist and McDonald. In fact, it is clear from the specific provisions of § 16-47-121 et seq. and other Code sections,[2] that such agreements are favored and are encouraged by the Legislature. Therefore, we hold that the portion of the agreement between Walker Baptist and McDonald wherein McDonald agreed “to establish a practice of obstetrics and gynecology exclusively in Jasper, Alabama ... for a period of not fewer than [48] consecutive months” is not an illegal restraint on McDonald’s profession and does not violate Alabama Code 1975, § 8-1-1(a), as being against public policy.
QUESTION NO. 1 ANSWERED; QUESTION NO. 2 DECLINED.
HOOPER, C.J., and HOUSTON, COOK, JOHNSTONE, and ENGLAND, JJ., concur.
SEE and LYONS, JJ., concur specially.
BROWN, J., concurs in the result.

. See § 8-1-1 (b) and § 8-1-1 (c), Ala.Code 1975.

. See, e.g., § 22-4A-1, which reads, in pertinent part:
"The Legislature hereby declares that it regards the furtherance of a greater supply of family physicians to be of great importance and further declares the establishment of programs pursuant to this chapter to be desirable, necessary, and an economical method of increasing the number of family physicians needed to provide medical services to the people of Alabama, especially in underserved rural areas.”